UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald James Monaco,<br>    Plaintiff,<br>    v.<br>Department of Justice et al.,<br>    Defendants. | Civil Action No. 02-1843 (EGS) |

## PLAINTIFF'S MOTION TO DISMISS SUMMARY JUDGEMENT

Plaintiff Donald James Monaco, respectfully moves this Court to dismiss Defendant's Request For Summary Judgement in favor of Plaintiff's complaint which was initially brought under the Freedom of Information Act, Title 5 USC § 552, and the Privacy Act, Title 5 USC § 552a. The grounds for this motion are set forth in the accompanying Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Opposition. This motion is also supported by Plaintiff Monaco's Affidavit contradicting assertions made in Defendant's Motion For Summary Judgement. (Please see Petitioner's attached affidavit pursuant to Federal Rule of Civil Procedure 56(e), Exhibit A).

Plaintiff would like to point out that since the Court declined to appoint him counsel in this case at this time, Plaintiff moved forward in this action without the benefit of a formal legal education and without the help of a qualified and honest attorney. Petitioner also points to the fact that he did not have enough law library time to properly respond from the inadequate F.P.C. Duluth "Rag-Tag" law library. The Duluth law library is very limited and has not been properly kept up by current BOP staff members or prisoners. Some of the most important law books and sections out of law books have been stolen and not replaced for quite some time now. Some of the missing legal material included vital sections out of Title 5 USC § 552, until just recently. Plaintiff did not have the advanced technology and time as that of a full time government attorney, and Plaintiff did not have the proper authority to direct the BOP to replace these missing pages or law books, which unfortunately placed the Plaintiff on an extremely unequal footing as that of the government's voluminous and highly complex pleadings in this action. At F.C.I. Waseca, where this action initially started, the Plaintiff at least had complete legal books, sufficient time and legal comrades he could rely upon to help him properly move forward on his pending legal actions. However, the Plaintiff has pieced together the following argument as best expected from within his Duluth Prison Camp confines with extremely limited resources and legal time available. Petitioner respectfully requests that the Court can please construe his response as liberal, see Haines v. Kerner, 404 U.S. 519(1972).

Respectfully submitted by:            *Donald James Monaco*

-1-

## AFFIDAVIT OF DONALD JAMES MONACO IN OPPOSISTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(e)

1) I, Donald James Monaco, being duly sworn upon oath, states as follows:

2) I declare that I am the Plaintiff in above said action, and that this affidavit is for the purpose of contradicting the Defendant's Motion For Summary Judgement based upon my personal knowledge and the opposing material facts brought forth under FRCP 56(e).

3) I declare that I am competent to testify in matters stated in this affidavit which sets forth specific facts showing genuine issues and evidence that require trial and/or immediate release of the FOIA requested material in this action.

4) I declare that I notified several individuals throughout different times at the Federal Public Defenders Office in Anchorage, Alaska, including my court-appointed attorney at the time, 20 year veteran Chief Federal Public Defender, Rich Curtner, that the regular and collect inmate telephone calls that I placed to him and his office from F.C.I. Waseca and other BOP facilities over the years, were in fact being tape recorded and possibly monitored unless I specifically asked for a special unmonitored attorney-client privileged telephone line.

5) I declare that I specifically requested and received from my attorney and the BOP, many one hour extended attorney-client privileged non-recorded telephone calls with Chief Federal Public Defender, Rich Curtner, and his investigators and staff members over the years, including many calls requested and granted while I was at F.C.I. Waseca, in which these special calls are well documented in my personal as well as BOP files.

6) I declare that Chief Defender Curtner, Defender Investigators, Cline and Wake, and many other veteran federal defender staff members involved with my criminal case, were all well aware of the fact that my regular 15 minute BOP inmate telephone system calls were in fact being recorded and possibly monitored without the specific request of a non-monitored attorney-client extended call.

7) I declare that Chief Federal Public Defender, Curtner, wrote several request letters to me at BOP facilities over the years asking the prison for special attorney-client extended length telephone calls, and I declare that these written requests are well documented.

8) I declare that at least one of the preserved telephone calls requested in this particular action, was in fact a recording made between myself and one of Chief Defender Curtner's female staff members who verbally disrespected me during a collect call to his office from a regular BOP inmate telephone system line.

9) I declare that I notified Chief Defender Curtner over another seperate telephone recorded conversation, stating that I was in the process of preserving the time-date stamp and release of this above inmate recorded call so I could prove to him and the court that some of his staff members were actually abusing the Due Process and other Rights of his public appointed clients by either hanging up on them and/or verbally abusing them, ect.

10) I declare that some of these regular BOP inmate telephone recorded conversations between myself and the Anchorage Federal Public Defender's Office mentioned the fact that I was having problem with the BOP in relationship to their inmate legal mail and telephone system operations, ect., which clearly falls within agency activities and operations under the FOIA statutes which support release.

11) I declare that the BOP and Federal Public Defender's Office are both part of the Department of Justice under the Executive, Judicial and Legislative branches of the U.S. Government, and that both of these agencies clearly fall within the ambit of FOIA statutes that require release when the BOP was recording these inter-related government agency calls.

12) I declare that the preserved telephone recorded conversations requested in this action should be reviewed in camera by a special master appointed by the court in order to fairly assess the contents of the tapes which show evidence of agency oper-

ations and activity problems, as well as criminal police corruption and obstruction issues related to fair public trial interests under the 5th and 6th Amendments dealing with compulsory, due process and affecective attorney Rights.

13) I declare that the release of this vital information far outweighs the need for privacy since the Chief Federal Public Defender and his staff members were aware of the BOP inmate telephone systems, routine recordings and possible monitoring of my frequent 15 minute collect and regular calls which were always made on the inmate telephone system lines unless specifically requested otherwise.

14) I declare that all statements made in this affidavit are true and correct to the best of my knowledge and ability under the penalty of perjury pursuant to Title 28 U.S.C. § 1746.

Dated: 6-11-03

Respectfully submitted by:

*Donald James Monaco*
Donald James Monaco
13314-006, Unit-208
P.O. Box 1000, F.P.C.
Duluth, MN  55814

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald James Monaco,<br>  Plaintiff,<br>v.<br>Department of Justice et al.,<br>  Defendants. | )<br>)<br>)<br>) Civil Action No. 02-1843 (EGS)<br>)<br>)<br>) |

### PLAINTIFF'S OPPOSISION TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff hereby repectfully submits the following arguments and disagreements of material facts presented by Defendant's. As clearly shown herewith, there are many genuine issues in opposision which are at stake in this action, and Defendant's are not entitled to summary judgement as a matter of law.

* Defendant's Issue No. 1, their page No. 1) Agree.

* Issue No. 2) Disagree. Not all six recordings requested were specific conversations with Plaintiff's court-appointed attorney. Some of these conversations were with other necessary staff members from the Federal Public Defenders Office in Anchorage, Alaska, and some of these other staff members were intricately involved in Plaintiff's criminal case. And why was one of these requested recordings mysteriously lost and/or destroyed, and where and when was it lost and/or destroyed, and how? See Little v. Armontrout, 835 F2d 1240 (8th Cir. 1987) Destruction of tapes violated due process if they had exculpatory value which was apparent before their destruction.

* Issue No. 3) Agree.

* Issue No. 4, their page No. 2) Agree that Plaintiff was advised under (b)(3) and (b)(7)(C), however, Plaintiff completely disagrees with the statutory exemptions in relationship to the material facts involved with this particular case. See Plaintiff's Memorandum and attached affidavit.

* Issue No. 5) Agree.

* Issue No. 6) Disagree. Attachment C mentioned by the government has nothing to do with Smith v. Department of Justice, 251 F3d 1047 (D.C. Cir 2001). Attachment C consists of one letter from the DOJ-OIP discussing the assignment number 01-1703 on Plaintiff's appeal, along with two letters from the Plaintiff asking for the release of the requested telephone recorded conversations and withheld information on subject matter of secrecy within Plaintiff's BOP files. And besides, Plaintiff has clearly shown that the above Smith case is right on point and enforces his position for the release of the requested telephone recorded information that he seeks. See Memorandum.

* Issue No. 7) Agree that Plaintiff was notified about the withdrawl of Exemption

-1-

3, but disagree that Exemption 7(C) would constitiute an unwarranted invasion of personal privacy based upon the particular facts involved with this immediate case and action pending. See Plaintiff's attached affidavit and Memorandum.

* Issue No. 8) Agree.

* Issue No. 9) Disagree. Plaintiff did seek written consent from the third party participants involved with these recorded calls, but Plaintiff has had no response to date. All third parties contacted so far have not stated any type of refusal to consent. Plaintiff has also not yet received any answer as to deny or approve why or why not consent has been delayed or not responded to.

* Issue No. 10) Plaintiff agrees that he was notified by this letter mentioned, but Plaintiff once again disagrees with Exemption 7(C), showing an unwarranted invasion of personal privacy due to the particular set of facts involved with the recorded calls and circumstances surrounding these issues.

* Issue No. 11, their page 3) Agree that there are notices posted around the ITS phones at FCI Waseca stating that the phones are subjected to monitoring, but the notices say nothing about constant recordings. And besides, Plaintiff once again states that his court-appointed attorney and other staff members were perfectly aware that his regular ITS 15 minute calls were being recorded and possibly monitored by the prison. Again see Plaintiff's affidavit at <u>Exhibit A</u>.

* Issue NO. 12) Same answer as above in No. 11.

* Issue No. 13) Disagree in the fact that the original response letter from the BOP and the Privacy Office in Washington <u>never</u> mentioned any of these exemptions from the start of Plaintiff's request up until now, and besides, there is no Telephone Activity Record System with a particular BOP number of: (Justice/BOP-<u>011</u>).

* Issue No. 14) 28 CFR § 540.102 does state that the Warden must provide notice to the inmate of the potential for monitoring, but it also states that the Warden shall establish these procedures for security, orderly managing and to protect the public. Protecting the public in this particular action should also encompass the fact that the Federal Public Defender's Office in Anchorage and the Anchorage Police Department were both trying to purposely block the Plaintiff from seeking further information and investigation into his criminal case which would expose police corruption and other unlawful issues involved with his initial state search, seizure, arrest, and federal litigation efforts. The recorded conversations clearly indicate Compulsory, Due Process and Ineffective violations under the 5th, 6th and 14th Amendments, as well as possible criminal and civil violations under Title 18 USC § 241 and 242, as well as Title 42 USC § 1983 and 1985. The Plaintiff and his family members, friends and associates (public interest) also have a stake in this particular action concerning agency operation and activity problems as well as fair public trial and representation issues. And besides, Plaintiff has more thoroughly briefed the issue on the process of obtaining an unmonitored attorney-client issued call from within the BOP in his attached memorandum and <u>Exhibit</u> at <u>A</u>.

\* Issue No. 15) Plaintiff once again points to the fact that he and his attorney were well aware of the facts involved in securing a non-monitored attorney-client phone line within the prison at Waseca. See Plaintiff's attached affidavit and memorandum once again.

\* Issue No. 16) Disagree. Plaintiff notified Chief Federal Public Defender, Rich Curtner, and some of Curtner's staff members who worked on Plaintiff's case from time to time, that Plaintiff's frequent 15 minute phone calls that were limited to 15 minutes on the BOP Inmate Telephone System phones were in fact recorded and possibly monitored. Plaintiff believes that he mentioned the recording and monitoring issues in at least one of these preserved telephone calls in this action. Plaintiff repectfully requests a "Special Master" be appointed from the Court in order to properly review the complete tapes in all fairness and equality for the express benefit of the facts and legal issues in question for the defense. As clearly shown in Title 5 § 552(a)(4)(B), FOIA permits but does not require in camera inspection of documents the government claims are exempt; and as also shown in Lam Lek Chong v. U.S. DEA, 929 F2d 729, 735 (D.C. Cir. 1991) The decision to conduct an in camera review of documents the government claims are exempt is in the broad discretion of the trial judge. And what about the mysteriously missing recording that is not accounted for? Was that particular taped conversation the one where Plaintiff mentioned that his calls were being recorded and possibly monitored?

\* Issue No. 17, their page No. 4) Plaintiff disagrees with Exemption 7(C) due to the particular facts involved, and Plaintiff also has no idea if any of these third parties have died since he has tried to obtain waivers. See Plaintiff's attached affidavit and memorandum once again.

\* Issue No. 18) Even though the Plaintiff did write the letter mentioned and initially declined the BOP's offer for release of his side of the conversation only, Plaintiff does not think that his portions of the conversations would be completely wothless considering the fact that he might be able to decipher most of what was being said with the help of these partial recordings. Plaintiff would like the Court to release all portions of the conversations if possible, but he would also like the option of obtaining the partial recordings if all else fails. Plaintiff reminds the Court that he claims false imprisonment and Constitutional innocence in his criminal case going on approximately six years now, and that the magnitude of Constitutional violations, unlawful obstructions and overly punitive depravations that he has unnecessarily suffered from are serious enough to shock the conscience of any progressing and civilized society. The need for full disclosure far outweighs the need for privacy in this action.

\* Issue No. 19) Agree.

\* Issue No. 20) Plaintiff agrees that he received this letter dated Feb. 28th, 2001, and Plaintiff also agrees that he can access his medical and central files

-3-

at the local prison records office, but he respectfully disagrees with the BOP's exemption quotes and the incorrect denial of his specific requested information pertaining to the reason that the BOP was seperating him from certain other individuals within the prison system. The information reasonably requested by the Plaintiff specifically included a request of the two pages of redactions and nine pages that were withheld in their entirety. This critical withheld information should be released to Plaintiff Monaco if these individuals have been classified as a potential safety problem or threat against him. Plaintiff has no idea who these withheld individuals are and why he is being seperated from anyone within the BOP. The Plaintiff has absolutely no co-defendants involved with his criminal case and has not testified against anyone, or anyone against him. Plaintiff is now in fear of his safety and wellbeing since this seperation issue came up, and the Plaintiff has a Right to know who he is being seperated from and why. Plaintiff has a Right to know who these potential threatening individuals are while he is being warehoused inside of prison or on the outside on supervised release. At least he would be able to protect himself if he knew who the possible threats were in the mistake that the BOP or DOJ would acidently place him near these people.

* Issue No. 21) Plaintiff disagrees with the government in that he is requesting medical and psychological files pertaining to himself. Plaintiff once again states that he is seeking only the preserved tape-recorded conversations and the information pertaining to who and why he is being seperated from while in prison.

* Issue No. 22) Agreed.

* Issue No. 23) Plaintiff agrees that the OIP affirmed the BOP's withholding of certain information from disclosure, but Plaintiff once again disagrees with Exemptions (b)(7)(C) and (b)(7)(F) in light of the particular facts involved with this action. Please see Plaintiff's attached affidavit and memorandum once again.

* Issue No. 24) Plaintiff disagrees that an adequate search and explanation of such has been provided to him, including a detailed explanation of why the 6th recorded telephone tape was not recovered from the Waseca dictaphone system and if anyone elses recordings were also lost at this time. Plaintiff also disagrees that an adequate search has been made or properly explained to him in relationship to the withheld information on who and why he is being seperated from while in prison.

* Issue No. 25) Plaintiff disagrees and once again requests the release of any and all information and/or partial information pertaining to the requested telephone conversations and information pertaining to who and why he is being segregated from while imprisoned. No material has been released to Plaintiff, segregated or not.

Dated: 6-11-03

Respectfully submitted by:

*Donald James Monaco*
Donald James Monaco
13314-006, Unit-208

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Donald James Monaco,<br>    Plaintiff,<br>v.<br>Department of Justice et al.,<br>    Defendants. | Civil Action No. 02-1843 (EGS) |

### PPLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S REQUEST FOR SUMMARY JUDGEMENT

#### INTRODUCTION

This case involves the Plaintiff Donald James Monaco's reasonable request for information from the Federal Bureau of Prisons under the Freedom of Information Act, Title 5 USC § 552 ("FOIA"), and the Privacy Act, Title 5 USC § 552a. Plaintiff is currently confined at the Federal Prison Camp in Duluth, Minnesota, ("FPC Duluth"). Plaintiff specifically seeks preserved copies of six seperate tape recorded telephone conversations between himself and his court-appointed attorney, Chief Federal Public Defender, Rich Curtner, and other staff members from the Federal Public Defenders Office in Anchorage, Alaska, who also worked on Plaintiff's criminal case over the years. The Federal Bureau of Prisons ("BOP"), made these routine recordings from various Inmate Telephone System, ("ITS"), telephone calls made by Plaintiff from the Federal Correctional Institution at Waseca, ("F.C.I. Waseca"). Two calls were made on August 25th, one call was made on September 25th, and three calls were made in November on the 17th, 20th and 21st, year 2000. None of the third parties involved with these particular recordings have yet signed a written waiver releasing the information requested, and Plaintiff claims that Chief Federal Public Defender, Curtner, and the other staff members who were working on his criminal case, were well aware of the fact that they were being recorded and possibly monitored on the telephone calls made by Plaintiff Monaco from inside prison. Release of these recorded conversations would not violate the substancial privacy rights of the third party participants due to the particular set of facts involved, (please see Plaintiff's affidavit once again at Exhibit A). BOP has incorrectly denied Plaintiff access to these six recorded conversations.

Plaintiff also seeks access to certain other information incorrectly being withheld by the BOP in his Central Inmate File which is vital to his safety and wellbeing both inside and outside of prison. The Plaintiff was initially notified by the BOP in the approximate year of 2000, that he was being purposely seperated from other individuals within the system that could pose a possible threat to him and the system as a whole. The Plaintiff and the public (including his family members, friends, as-

-1-

sociates, ect.) have a right to know who is a possible threat to him inside and outside of prison and why. The Plaintiff and the public also have a right to know the process, activities and operations concerning this type of seperation within the system. Before closing, Plaintiff would like to mention one more time for the record, that he repectfully disagrees with the District Court Order dated November 25th, 2002, dismissing the federally involved Alaska State Agencies who were initially named in this action from the very start. Plaintiff once again points to the fact that the Alaska State Agencies who have been dropped from this action had <u>routine</u> federal involvement on a frequent daily and weekly basis with Plaintiff's criminal case, ongoing investigation and detention, which clearly places them under the umbrella of the Freedom of Information and Privacy Act. (Please see the initial FOIA complaint and supporting exhibits dropped from this action in the Court Docket Sheet).

### ARGUMENT IN OPPOSITION

The government's argument in this action mainly relies upon Exemptions under § 7 of the Freedom of Information Act, Title 5 USC § 552, ("FOIA"). Plaintiff Monaco has a statutory right under FOIA, for the government to force disclosure of agency records upon his request. Plaintiff also has a Constitutional Right under the 7th Amendment, to a jury trial in respect to disputed issues of facts. Exemption (b)(3) and (b)(7)(C) were the only FOIA Exemptions that BOP Regional Counsel, Daryl Kosiak, initially quoted Plaintiff as reason for the denial of the requested (ITS) Inmate Telephone System recorded calls. (Please see Kosiak's initial letter to Plaintiff Monaco in the government's Request For Summary Judgement at their <u>Exhibit B</u>). Defendant, Department of Justice, <u>has not</u> justified its nondisclosure of this information under Exemption (b)(3) or 7.

### STANDARD OF REVIEW

Contrary to the government's position in recognition of the immediate FOIA action, summary judgement <u>is not</u> appropriate when, as here, the pleadings, together with declarations, demonstrate that <u>there is</u> a genuine issue of material fact and factual discrepancies that <u>do not</u> entitle moving party to a judgement as a matter of law. Fed. R. Civ. P. 56(d) and (e); <u>Mecier v. Brandon</u>, D. Vt. 1996, 938 F. Supp. 91, In determining whether party moving for summary judgement has met its burden, court must resolve all ambiguities in favor of nonmoving party; <u>Sobel v. Yeshiva University</u>, 477 F.Supp. 1161 (1979) Summary judgement is harsh remedy, to be granted in only extremely rare instances; <u>Eberhardy v. General Motors Corp.</u>, D.C. Fla. 1975, 404 F.Supp. 826, It is for the court, and not the movant or the opponent of the summary judgement motion to decide whether there is an absence of any genuine issues of material fact and whether movant has a right to summary judgement as a matter of law; <u>Getek v. Ohio Cas. Ins. Co.</u>, E.D. Pa. 1994,

-2-

868 F.Supp. 751, On motion for summary judgement, court must accept nonmovant's version of facts as true and resolve conflicts in nonmovants favor; <u>Garside v. Webster</u>, 733 F.Supp. 1142 (S.D. Ohio 1989) The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgement, quoting <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 463 (1962) "The issue of material fact required by Rule 56(c)... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties differing versions of the truth at trial." quoting <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

The records Plaintiff reasonably requests <u>are not</u> exempt from the Privacy Act's provisions.

Also, contrary to the governments opinion as to why Plaintiff is seeking these particular records, the records sought by Plaintiff not only relate to agency operation problems and procedures, they also relate to unlawful criminal police corruption, false reporting and obstruction of justice issues that were incorrectly used against him, along with unfair public trial and investigation standards which are intricately involved with his criminal case. Other non-criminal violations of Due and Compulsory Process Rights and other Constitutional violations under the 4th, 5th, 6th and 14th Amendments could also be at stake with the information requested in this action. Because of the above and other reasons quoted in these briefs, the records are not exempt from the access of the Freedom of Information and Privacy Act by statute. As a matter of fact, the provisions are actually in favor of release to the Plaintiff in the best interest of justice, the public, judicial economy and the United States Court-system for the benefit of the detection, exposure and correction of ongoing unlawful activities and problems within public government systems.

### BOP DID NOT PROPERLY APPLY EXEMPTION 7

The government contends that it has clearly shown that the BOP demonstrated that the information was compiled for law enforcement purposes. Plaintiff once again points to <u>Smith v. Department of Justice</u>, 251 F.3rd 1047 (D.C. Cir. 2001) Where the Court of Appeals, Ginsburg, Circuit Judge, held that prison authorities did not "intercept" consentually or otherwise, any communication within meaning of Title III of the Omnibus Crime Control and Safe Streets Act when they routinely monitored and recorded inmate's conversation with his attorney, in case in which inmate chose not to use available unmonitored line, and thus the recordings were not exempt from disclosure under FOIA as specifically exempted by statute, as the recordings were obtained by "law enforcement officers" who "used," "in ordinary course of their duties," some telephone "instrument, equipment, or facility, or [a] component thereof." Plaintiff also points to the case, <u>Goodfriend Western Corp. v. Fuchs</u>, 411 F. Supp. 454, (D.C. Mass. 1976) Where claims of

-3-

"protection under § (b)(7) of this section must be examined individually and the specific harm alleged to the agency weighed on a case by case basis.

    Plaintiff Monaco and prison staff members as well as the community need to be informed of government agency operation and activity problems such as the ones he was experiencing with legal phone and mail issues while in federal prison. Americans also need to be protected against police corruption and unlawful lawyer issues such as the ones intricately involved in Plaintiff's criminal case in relation to the information requested in this action. Misuse of the public trust and funding by corrupt state and federal officials are all to unfortunately the norm in todays society. These types of problems cannot be overlooked or allowed to go uncorrected in our free American society. The American Justice System and the Spirit of FOIA demands the truth to be known about unlawful or problematic government activities concealed under the shroud of secracy. The government's quote of the Keys case and argument actually reinforces the position of Plaintiff in accord with the particular facts involved with this immediate action in relationship to the requirement of exemption 7.

## 1. BOP DID NOT PROPERLY WITHHOLD TAPED CONVERSATIONS UNDER EXEMPTION 7(C)

    The government's main issue in their brief incorrectly argues that the BOP properly applied Exemption 7(C) to protect the privacy interests of the third-party individuals involved. Plaintiff Monaco respectfully disagrees and has no problem waiving any attorney-client privilege Rights that the government mentions on page 8 of their brief. As a matter of fact, it would be in the best interest of justice and judicial economy for the public at large and the Plaintiff, to order disclosure of this FOIA requested material. The public, Plaintiff and world at large needs to be properly informed about the extremely vital information contained in these requested telephone recorded conversations and others like them from the millions of people who are unfortunately being sent to prison unlawfully with incompetent and obstructive representation. Critical information contained in these requested recordings can shed light on local Anchorage Police Deperatment corruption who purposely relayed maliciously falsified reporting information to the FBI about Plaintiff, and then went on to purposely obstruct the investigation attempt into the Plaintiff's case and criminal charges. Plaintiff's court-appointed attorney at the time, who was the Anchorage Chief Federal Public Defender, was also obviously involved in this cover-up mess in which the requested recordings clearly show further obstuctionism, Due and Compulsory Process and other Constitutional violations. The Plaintiff points out that the above mentioned state and federal agencies have always been paid for by the public for their service and supposed honesty in the first place!

    Society has a Right to know what is going on in their communities and courtsystems, and they also have a Right to know how their hard earned tax dollars are being spent. Bad faith police officers and ineffective non-compliant government agencies cannot be

continually allowed to break and bend the laws and obstruct justice in order to enforce the laws. When the government becomes the law-breaker, it breeds comtemp for the law. And besides, the Plaintiff has clearly explained in his attached affidavit as shown in Exhibit A, that Chief Federal Public Defender, Rich Curtner, and his staff members, were all aware of the fact that Plaintiff Monaco's frequent 15 minute Inmate Telephone System calls were being recorded and possibly subjected to monitoring. Plaintiff Monaco even told Chief Federal Public Defender, Curtner, and a few of his other staff members at one time or another, that his calls to them from prison were being recorded and possibly monitored because of prison policy. There was no secret here with these recorded calls, and the privacy Rights of these individuals would not be violated with the release of this requested information. According to U.S. v. Willoughby, 860 F.2d 15 at 22 (2nd Cir. 1988) "With respect to telephone communications, the public is on notice pursuant to regulations published in 28 CFR §§ 540.100 and 540.101 (1987) that prison officials are required to establish procedures for monitoring inmate calls to non-inmates. Given the institutions strong interest in preserving security, we conclude that the interception of calls from inmates to non-inmates does not violate the privacy rights of the non-inmates." As also shown in U.S. v. Sababu, 891 F.2d 1308 at 1329-30 (7th Cir. 1989) We believe that Garcia did not have a reasonable expectation of privacy in her telephone conversations with Lopez, an inmate in federal prison. Garcia was a frequent visitor to Leavenworth and was well aware of the strict security measures in place. She was put on notice through the Code of Federal Regulations that prison officials were authorized to monitor inmates' telephone calls. See United States v. Montgomery, 675 F.Supp. 164, 169 (S.D. N.Y. 1987). And as shown in the closing of Sababu at 1329, "In so holding, we are in agreement with the court in Vasta that "[i]t is difficult to imagine that the considerations that justify monitoring and recording of a prisoners utterances could somehow not apply at the other end of the telephone. The **rights** of free persons may well at times be implicated and stand or fall with the rights of prisoners." Vasta 649, F.Supp. at 991.

    Plaintiff points out that one of these preserved calls requested in this action, that Chief Federal Public Defender Curtner states to Plaintiff Monaco: "Judge Sedwick is not interested in any type of police corruption issues involved with your case". On another one of these ITS recorded conversations with Plaintiff Monaco, Federal Public Defender Investigator, Cheryl Cline, states that she can't seem to pierce the "red-tape veil" of bureacracy at the police department and that she was told that your case was to old to investigate any further. Investigator Cline also states in one of these calls, that she was told by her superiors not to go any further with an investigation into Monaco's case unless there is a court order to do so. These recordings are not only vital for Plaintiff's ongoing criminal litigation purposes, they are also critical for the public at large to know what kind of corruption and obstructionism is truly going on in their own backyards with their local police and federal defender pro-

grams. The need for release far outweighs the need for privacy, especially when privacy was hardly expected in the first palce. FOIA was enacted to ensure public access to government information. The purpose of the statute is to permit the public to scrutinize the government's performance of it's duties and promote governmental honesty. EPA v. Mink, 410 U.S. 73, 79-80, 93 S.Ct. 827, 832-33, 35 L.Ed. 2d 119 (1973); Doubts to the propriety disclosure are to be resolved in openess. Providence Journal Co. v. United States Dept. of Army, 981 F.2d 552, 557 (1st Cir. 1992).

The government also incorrectly contends, that the purpose of FOIA would not be served in this case by disclosure of the taped conversations, because it would not shed light on the agencies performance of it's statutory duties or the operation and activities of the government. Nothing could be further than the truth and the Plainiff respectfully disagrees. The release of these recordings would help to show the Court and the public at large, what types of unlawful and obstructive barriers an indigent person like Plaintiff experiences with pre-trial Compulsory and Due Process Rights and investigation problems in a state turned federal litigation under the ineffective representation of a federal public defender office.

The Plaintiff reminds the Court that he claims Constituional innocence in his criminal case and also claims false imprisonment over the past approximate 7 very long and hard years of his life. Local bad faith Anchorage Police Department and other government agency corruption, false reporting, perjury, obstruction of justice and the unlawful and ineffective blocking of investigative needs involved with Plaintiff's criminal case, have been prevalent and ongoing from the start and throughout. Light can be shed to benefit the publics interest in these types of ongoing abuses with the proper decision to release this reasonably requested information.

Information within the requested telephone recordings can also be successfully used for inquiry and public notice into the misconduct of the Anchorage Police Department's unlawful obstruction of justice and false reporting to the FBI, along with the Federal Public Defender's further obstructionism when they abused their statutory duties, operations and activities in relationship to the investigative and litigative processes surrounding the Plaintiff's criminal case and his Constitutional Right to a fair trial.

The Court should also note that the U.S. Attorney Office and the FBI had joint investigative activity against Plaintiff Monaco which included the Anchorage Police Department, the Alaska State Troopers, and the Alaska Attorney General's Office. This joint state and federal investigative task force information is well documented and available in the possession of the Plaintiff's and Department of Justice files. Note that the Anchorage Police Department provided all of the purposely falsified reporting information to the FBI in regards to Plaintiff's criminal charges which could indicate joint agency corruption. As clearly shown in Burge v. Eastburn, 934 F.2d 577 (5th Cir. 1991) The court recognized that there is of course, a public interest in fair trials and perhaps in the contents of alleged statements to the FBI.

The Plaintiff would also like to point out that he was having ongoing problems with the BOP and their Inmate Mail and Telephone Systems at FCI Waseca in regards to

his incarceration and criminal legal case and communication efforts. Some of the recorded conversations requested discuss legal phone and mail problems between the Plaintiff's Court-appointed Federal Public Defender's Office and the BOP's Inmate Legal Mail & Telephone System operations and activities problems in these areas. According to <u>Dept. of Justice v. Reporters Comm.</u>, 103 L.Ed.2d 774 at 795-96 (1989) Official information that sheds light on an agencies performance of it's statutory duties falls squarely within that statutory purpose.

Accordingly, because release would not violate the Privacy Act and would shed light perspective governmental statutory duties, operations, activities, unlawful obstructionism and other violations, and since the privacy interests of the third parties were not expected and were aware of the recordings in the first place, the Plaintiff's interest for release far outweighs the security interest in the same material. The BOP is required to release the routine Inmate Telephone System recorded information requested in this action. As shown in <u>Garside v. Webster</u>, 733 F.Supp. 1142 (S.D. Ohio 1989) Telephone records which were not secured by the grand jury as a result of subpoena but were kept by the FBI routinely in the daily course of business were subject to disclosure under the Freedom of Information Act. 5 USCA § 552.

## 2. BOP DID NOT APPROPRIATELY WITHHOLD INFORMATION UNDER EXEMPTIONS 7(C) AND 7(F) WITH RESPECT TO REQUEST No. 01-2514

Once again, Plaintiff Monaco disagrees with the government and the BOP's incorrect position to withhold reasonably requested information from Plaintiff's Inmate Central File. The Plaintiff was initially notified by letter from his BOP Case Manager Ryan, at FCI Waseca, in the approximate year of 2000, that the BOP was purposely keeping him seperated from other individuals who were also in federal prison. The reason for this BOP letter and notification of seperation, was stated as being for security and safety purposes. What if the BOP and DOJ make a mistake and accidently place the Plaintiff in with or around these officially seperated individuals? The Plaintiff has no idea who or why he has been purposely seperated from in prison. The Plaintiff had absolutely no co-defendants involved with his criminal case and absolutely no one testified against him at trial except for one corrupt police officer from the Anchorage Police Department. The Plaintiff has also not testified in court against anyone related to his criminal case or imprisonment thereof. The question is why was this safety seperation handed down and from whom? And who is the Plaintiff being officially seperated from, and why is that information being withheld from him?

The Plaintiff and his family members, friends and associates (public interest) fear for his life and safety in prison to begin with. Plaintiff has been incorrectly threatened with physical bodily harm on 17 seperate occasions by some very violent and frustrated individuals over the past 6 long years of his false imprisonment. The Plaintiff and others who care for him have a Right to know who could be a possible further specific threat to him on the inside of prison, or a possible threat to him, his family members, friends and associates on the outside, (thus, public interest). Plain-

-7-

tiff and his family members, friends and associates (public interest) also have a Right to know what the BOP's activities & operations are in these types of areas that led up to this official seperation and notice thereof. Because of the personal and public interest in operations and activities like these mentioned, the BOP does not have a 7(C) Exemption at stake, and the information has to be "disclosed" in the best interest of justice, judicial economy, and the Plaintiff's family, friends and his wellbeing (an informed citizenery). According to Baez v. Department of Justice, C.A.D.C. 1980, 647 F.2d 1328, 208 U.S. App. D.C. 199: To determine whether subsection (b)(7)(C) of this section is properly asserted in case under this section, district court must balance privacy interest involved against public interest in disclosure.

Besides, the government's brief incorrectly tries to paint Plaintiff Monaco as some type of evil monster drug kingpin out for revenge or something. Nothing could be further from the truth! Just because the Plaintiff was unlawfully convicted to a barbaric 11 years in prison on his alleged charges, it does not make him a bad person. The Plaintiff is a college graduate and former competitive bodybuilding champion who was competitive in the states of Alaska, Nevada and Texas. The Plaintiff does not have a violent past record or history, and the Plaintiff deserves to have complete access to his Inmate Central File disclosing the operations and activities of the BOP surrounding these supposed secret files. Besides, the Plaintiff should have access to the information concerning false and malicious testimony used against him, including information unlawfully blocking him from a further necessary legal investigation into his corrupt charges, representation, trial and unlawful conviction. As clearly shown in Cohen v. EPA, D.C.D.C. 1983, 575 F.Supp. 425: For purposes of § (7)(C) exemption under this section permitting nondisclosure of documents, it is the responsibility of courts to balance privacy interests on a case by case basis.

### DISAGREEMENTS WITH THE BOP'S REASONABLE SEARCH FOR RESPONSIVE DOCUMENTS AND NON-EXEMPT INFORMATION

Once again the Plaintiff states that he disagrees with the adequacy of the search and explanation that the BOP has given him about the missing telephone recorded conversation that he seeks. The Plaintiff deserves a further detailed explanation of the missing recording, including the names of the federal staff members who were working on the recovery of these recordings. Plaintiff also deserves an explanation and detail of the types of equipment and recovery process of these recordings. Plaintiff also deserves an explanation of whether any other prisoners also lost their recorded conversations along with his. The Plaintiff also disagrees that he should only be granted the release of his portions of the conversations only. Even though Plaintiff will take the partial recordings offered, he thinks that he should get the full release requested. Even though Plaintiff has reviewed the Vaughn Index attached, he does not think that the nine pages withheld in full about seperation issues were correctly segregated. Plaintiff believes that he should be released all of the informa-

-8-

tion requested about the seperation issues, including the statutory rules relating to this type of activity. The <u>Vaughn</u> Index incorrectly states that the Plaintiff and his family members and friends, including supposed criminal associates, could endanger the safety of these seperated individuals. The problem here is that the Plaintiff and his family members, friends and associates are the ones who actually feel threatened about these seperated individuals and operations related thereof. Plaintiff requests that the court appoint a special master to review all information withheld. Plaintiff does not believe that the privacy interests of third parties will be violated in the best interest of justice and FOIA if this information is properly reviewed and released.

## CONCLUSION

Because the Plaintiff has shown that the BOP has not conducted a reasonable search for the specific information that he has reasonably requested for several years now, and since the BOP has not provided all information requested by Plaintiff, this Court should not grant the Defendant's motion for summary judgement and the Plaintiff's complaint should not be dismissed with prejudice. The Plaintiff clearly gave consent to the telephone recordings and the third parties knew that the calls were being monitored. This Court should order the release of all information requested by Plaintiff in this action.

Dated: 6-11-03

Respectfully and truthfully submitted to the best of my knowledge under the penalty of perjury as shown in Title 28 USC § 1746.

*Donald James Monaco*
Donald James Monaco
13314-006, Unit-208
P.O. Box 1000, F.P.C.
Duluth, MN  55814

-9-

## CERTIFICATE OF SERVICE

I, Donald James Monaco, hereby certify that I have served a true and correct copy of the following:

A) Plaintiff's Motion To Dismiss Summary Judgement.
B) Affidavit Of Donald James Monaco In Oposision To Defendant's Motion For Summary Judgement Pursuant To Federal Rule Of Civil Procedure 56(e).
C) Plaintiff's Oposision To Defendant's Statement Of Material Facts.
D) Plaintiff's Memorandum Of Points And Authorities In Opposition To Defendant's Request For Summary Judgement.

which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston v. Lack, 487 U.S. 266 (1988), upon the (plaintiff/defendant) (petitioner/respondent) (appellant/appellee) and/or its attorney(s) of record by placing same in a sealed, postage prepaid envelope addressed to:

Clerk of Court                             and:   U.S. Attorney's Office
U.S. District of Columbia                         District of Columbia
333 Constitution Ave., N.W.                       Judiciary Center
Washington, D.C.  20001                           555 4th Street, N.W.
                                                  Washington, D.C.  20530

and deposited same in the United States mail box at: Federal Prison Camp, Duluth, P.O. Box 1000, Duluth, Minnesota  55814

11th day of June, 2003.

Donald James Monaco
13314-006, Unit-208
P.O. Box 1000, F.P.C.
Duluth, MN  55814

CC: DM/MF